CLERK'S OFFICE U.S. DIST. COURT
AT ABINGDON, VA
FILED
SEP 21 2006
JOHN F. CORCORAN, CLERK
BY: DEPUTY CLERK

# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF VIRGINIA
# ABINGDON DIVISION

| | |
|---|---|
| **FREDA MICHELLE JOHNSON,** Plaintiff, | Civil Action No.: 1:05cv00079 |
| v. | **MEMORANDUM OPINION** |
| **PARAMONT MFG., LLC, et al.,** Defendants. | By: GLEN M. WILLIAMS Senior United States District Judge |

This is an action for damages brought pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.,* which gives this court jurisdiction to hear this matter. Freda Michelle Johnson, the plaintiff, previously filed a complaint with the Equal Employment Opportunity Commission, ("EEOC"), on September 24, 2004. On June 3, 2005, Johnson received notice from the EEOC that her claim was denied. Johnson then timely filed her complaint with this court on August 31, 2005, against Paramont Manufacturing LLC, ("Paramont"), and James Brown, Myron Randles, and Gary Collins, who were employees of Paramont. Paramont is a limited liability company organized and existing under the laws of the Commonwealth of Virginia. By her amended complaint, Johnson alleges Paramont violated her civil rights under 42 U.S.C. § 2000e-2(a)(1) by creating a hostile work environment and under 42 U.S.C. § 2000e-3(a) by retaliating against her. She further alleges that Paramont and Randles committed a battery against her, that Paramont, Randles, Collins and Brown are liable for her wrongful discharge from Paramont, and that Randles and Collins are liable for tortious interference with Johnson's contract of employment with Paramont.

## I. Facts

Since this matter is before the court on the defendants' motion to dismiss, the facts as alleged by Johnson in her amended complaint and attached documents will be accepted as true. *See DeSole v. U.S.,* 947 F.2d 1169, 1171 (4th Cir. 1991). Johnson was employed by Paramont at Paramont's manufacturing plant located in Washington County, Virginia, beginning on or about April 2003. She performed duties as a sander, as a preparer and also worked on moldings.

While employed at Paramont, Johnson alleges that Randles, who was the floor manager at the plant, Collins, the plant manager, and Brown, the owner, managing partner, president and chief executive officer of Paramont, all had general supervisory authority over her and engaged in an immediate and continual course of sexual discrimination, sexual harassment and sexual advances toward her. Johnson further alleges that the sexual harassment substantially affected her employment, caused her to resign and created a hostile work environment. Johnson alleges that Randles would put his arm around her in such a way that his hand would touch her breast. According to Johnson, in her presence, Randles and Collins called other women "baby," "girlfriend" and other terms of endearment and asked them for sexual favors, commented about their physical appearance, kissed female employees' necks and stuck their tongues into female employees' ears, and they addressed many of the female employees using graphic sexual innuendos.

Johnson alleges that she continually complained about the pervasive sexual harassment that was taking place at Paramont. As a result of her complaints, Johnson

-2-

said that she experienced retaliatory actions. Specifically, Johnson alleges that her complaints caused her to be transferred to other jobs in the manufacturing plant with which she was unfamiliar. Johnson claims that, despite her unfamiliarity with the new jobs, she was still expected to perform at the same level of output as the experienced workers. Further, she alleges that Randles, Collins and her co-worker Olivia Jones harassed her almost daily because of her complaints. Also, the jobs to which Johnson was transferred reduced her chance for promotion because the jobs required more physical labor and were under the direct supervision of Randles. Johnson alleges that both Collins and Randles accused her of poor job performance and required her to sign a disciplinary write-up for unsatisfactory work, transferred her to other jobs and required her to meet higher performance standards than other similarly situated employees. As a result of the job transfers, Johnson said that she experienced physical and emotional stress.

Johnson further alleges that Jones retaliated against her daily. She claims that Jones glared and stared at her, made obscene gestures toward her, threatened to assault her and actually assaulted her with a steel pipe on company premises. Johnson alleges that, even after she complained to supervisors, no actions were taken to cease these actions.

Johnson also alleges that the Randles and Collins attempted to force her to engage in criminal activity, including fornication, sexual battery, aggravated sexual battery and prostitution, as well as being an accessory to the previously listed crimes. According to Johnson, as a result of the ongoing harassment, she was forced to resign.

*II. Analysis*

As stated above, in ruling on a motion to dismiss brought pursuant to Federal Rule of Civil Procedure 12(b)(6), the court should accept as true all well-pleaded allegations and view the complaint in a light most favorable to the plaintiff. *De Sole v. U.S.*, 947 F.2d 1169, 1171 (4th Cir. 1991) (citing *Jenkins v. McKeithen*, 395 U.S. 411, 421 (1969)). "[A] 12(b)(6) motion should be granted only in very limited circumstances." *Rogers v. Jefferson-Pilot Life Ins. Co.*, 883 F.2d 324, 325 (4th Cir. 1989). The court may not dismiss a complaint unless the plaintiff can prove no set of facts that would entitle the plaintiff to relief. *See Conley v. Gibson*, 355 U.S. 41, 45-46 (1957). "The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974).

*A. Title VII Claims*

Johnson alleges that she was the victim of sexual harassment, a hostile work environment, retaliation and gender discrimination, all in violation of 42 U.S.C. § 2000e *et seq*. The defendants collectively agree that Johnson has pleaded facts sufficient to survive their motion to dismiss regarding her sexual harassment, hostile work environment and retaliation claims. Therefore, all that remains at issue in regard to the defendants' motion to dismiss under Title VII is whether or not Johnson has pleaded sufficient facts to support her gender discrimination claim.

Title VII makes it "an unlawful employment practice for an employer . . . to

discharge . . . or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's . . . sex." 42 U.S.C.A. § 2000e-2(a)(1). A "plaintiff may establish a claim of discrimination by demonstrating through direct or circumstantial evidence that sex . . . discrimination motivated the employer's adverse employment decision." *Hill v. Lockheed Martin Logistics Mgmt., Inc.*, 354 F.3d 277, 284 (4th Cir. 2004). A plaintiff who lacks direct evidence of sex or gender discrimination may proceed under a burden-shifting scheme. To establish a prima facie case under this burden-shifting scheme, a plaintiff must demonstrate

> (1) she is a member of a protected class; (2) she suffered adverse employment action; (3) she was performing her job duties at a level that met her employer's legitimate expectations at the time of the adverse employment action; and (4) the position remained open or was filled by similarly qualified applicants outside the protected class.

*Hill*, 354 F.3d at 285.

Paramont argues that Johnson's allegations, as a matter of law, cannot establish that she suffered an adverse employment action because of her gender. *See* Defendant's Memorandum Of Law In Support Of Motion to Dismiss Amended Complaint, ("Defendant's Brief"), at 5. Johnson, however, argues that the adverse employment action that victimized her was that she was transferred to other jobs within the plant where her chance for promotion was reduced, where she would receive decreased compensation and where she would be much more likely to be terminated from her employment and that all of the jobs to which she was transferred required more physical labor and training.

An adverse employment action is a discriminatory act which "adversely affects the 'the terms, conditions, or benefits' of the plaintiff's employment." *James v. Booz-Allen & Hamiltion, Inc.*, 368 F.3d 371, 375 (4th Cir. 2004) (quoting *Von Gunten v. Maryland*, 243 F.3d 858, 865 (4th Cir. 2001)). "The mere fact that a new job assignment is less appealing to the employee, however, does not constitute adverse employment action." *James*, 368 F.3d at 376 (citing *Von Gunten*, 243 F.3d at 868). A "reassignment can only form the basis of a valid Title VII claim if the plaintiff can show that the reassignment had some significant detrimental effect." *Boone v. Goldin*, 178 F.3d 253, 256 (4th Cir. 1999). "[A]bsent any decrease in compensation, job title, level of responsibility, or opportunity for promotion, reassignment to a new position commensurate with one's salary level does not constitute an adverse employment action even if the new job does cause some modest stress not present in the old position." *Boone*, 178 F.3d at 256-57.

In viewing the facts in the light most favorable to Johnson, this court finds that Johnson has pleaded minimally sufficient facts to support her claim of sex or gender discrimination. Johnson alleges in her amended complaint that the adverse employment action was that she was transferred to positions where her chance for promotion was reduced, where she would receive a decrease in compensation and where she would be much more likely to be terminated from employment; and that the positions to which she was transferred required more physical labor and training than her previous positions. These are facts, which if proven true, would constitute an adverse employment action for the purpose of establishing Johnson's claim. Therefore, the defendants' motion to dismiss Johnson's sex or gender discrimination claim will be overruled.

## B. State Law Claims

When pendent state law claims are presented to a federal court in conjunction with a federal question claim, a federal court has supplemental jurisdiction to hear the pendent state law claims if they form "part of the same case or controversy" as the federal claim. *See Eriline Co. S.A. v. Johnson*, 440 F.3d 648, 653 (4th Cir. 2006) (quoting *White v. County of Newberry*, 985 F.2d 168, 171 (4th Cir. 1993)); 28 U.S.C. §§ 1331, 1367. Here, the plaintiff's claims of battery, wrongful discharge and tortious interference with a contract clearly arise from the "same case or controversy" as the underlying Title VII claim.

Furthermore, when deciding state law claims under supplemental jurisdiction, federal courts apply the choice-of-law rules of the jurisdiction in which they sit. *Mastro v. Potomac Elec. Power Co.*, 447 F.3d 843, 857 (D.C. Cir. 2006). Thus, since this court sits in the Commonwealth of Virginia, Virginia's choice-of-law rules will govern. Virginia follows the traditional *lex loci* approach, which means the substantive law of the place of the wrong will be applied. *See Frye v. Commonwealth*, 231 Va. 370, 376 (1986). Therefore, Virginia law will govern the remaining state law claims.

### 1. Battery

Johnson alleges that Randles committed battery against her and that liability should be imputed to Paramont under the theory of respondeat superior. According to Johnson, Randles was her supervisor, and while performing his duties as

-7-

supervisor for Paramont, he rubbed his genital area against Johnson's hips, grabbed her buttocks, put his arm around her shoulders and touched her breast.

To establish a prima facie case for battery under Virginia law, Johnson must allege that she was touched "in a rude, insolent or angry manner." *Kidwell v. Sheetz, Inc.*, 982 F. Supp. 1177, 1185 (W.D. Va. 1997) (quoting *Crosswhite v. Barnes*, 124 S.E. 242, 244 (Va. 1924)). Johnson has met this threshold requirement in that she alleges that Randles rubbed the genital area of his body against her hips, grabbed her buttocks, put his arm around her shoulders and touched her breast.

The next issue then becomes Paramont's liability under a repondeat superior theory. In *Majorana v. Crown Cent. Petroleum Corp.*, 539 S.E.2d 426 (Va. 2000), the Supreme Court of Virginia addressed the issue of respondeat superior liability and explained that:

> When the plaintiff presents evidence sufficient to show the existence of an employer-employee relationship, she has established a *prima facie* case triggering a presumption of liability . . . the burden of production then shifts to the employer, who may rebut that presumption by proving that the employee had departed from the scope of the employment relationship at the time the injurious act was committed.

*Majorana*, 539 S.E.2d at 429. Johnson alleges in her amended complaint that Randles was her supervisor and that, while supervising her, he committed a battery against her. Thus, Randles, in his capacity as a supervisor, was performing a function of his job when the alleged battery occurred. Therefore, Johnson has alleged facts

-8-

sufficient enough to survive Paramont's motion to dismiss, and accordingly, the defendants' motion to dismiss Johnson's battery claim will be overruled.

## 2. *Wrongful Discharge*

Virginia law adheres to the employment at-will doctrine[1] and only recognizes a limited public policy exception as grounds for a lawsuit for firing an at-will employee. *See Rowan v. Tractor Supply Co.,* 559 S.E.2d 709, 710-11 (2002). Thus, in Virginia, an employer may terminate an employee at-will after reasonable notice without cause when no term of employment is discernable from the employment contract. *See Stonega Coal & Coke Co. v. Louisville & N. R. Co.,* 55 S.E. 551, 552 (Va. 1906). In Virginia, a viable wrongful discharge claim by an at-will employee is created under three limited circumstances: (1) where "an employer violated a policy enabling the exercise of an employee's statutorily created right[;]" (2) when an employer violated a policy "explicitly expressed in the statute and the employee was clearly a member of that class of persons directly entitled to the protection enunciated by the public policy[;]" and (3) "where the discharge was based on the employee's refusal to engage in a criminal act." *Rowan,* 559 S.E.2d at 710-11.

In her amended complaint, Johnson alleges that Randles, Collins, Brown and Paramont attempted to force her to engage in fornication, sexual battery, aggravated sexual battery, prostitution and being an accessory to all of the above. Because of

---

[1] Employment at will is employment that is usually undertaken without a contract and that may be terminated at any time, by either the employer or the employee, without cause. BLACK'S LAW DICTIONARY 566 (8th ed. 1999).

this, Johnson alleges that she was forced to quit her job. Thus, it would appear that Johnson is arguing that she was constructively discharged.

The Supreme Court of Virginia has yet to recognize the tort of constructive discharge in the area of employment. *See Johnson v. Behsudi*, 52 Va. Cir. 533, 537 (1997). However, when a federal court is to apply the substantive law of a particular state, and that state's highest court has not addressed the issue presented, the federal court must anticipate how the state's highest court would rule. *Weaver v. Caldwell Tanks, Inc.*, 2006 U.S. App. LEXIS 16339 (6th Cir. 2006); *see also Bailey Farms, Inc. v. NOR-AM Chemical Co.*, 27 F.3d 188, 191 (6th Cir. 1994). Thus, since Virginia has not addressed the issue of constructive discharge, it is the duty of this court to anticipate how the Supreme Court of Virginia would rule.

In attempting to determine how the Supreme Court of Virginia would rule, we will examine how other courts have dealt with this issue. In *Johnson*, a Virginia Circuit Court adopted the Fourth Circuit Court of Appeals test for constructive discharge, which is set out in *Bristow v. The Daily Press, Inc.*, 770 F.2d 1251 (4th Cir. 1985). In *Bristow*, the court determined that "a constructive discharge occurs when an employer deliberately makes an employee's working conditions intolerable and thereby forces him to quit his job." 770 F.2d at 1255. Under this analysis, in order to properly establish a prima facie case of constructive discharge, Johnson must demonstrate (1) the deliberateness of the employer's action; and (2) the intolerableness of the working conditions. *Bristow*, 770 F.2d at 1255. Deliberateness is established by showing that the employer intended to force the employee to quit his or her job; while intolerableness is shown by demonstrating that a reasonable person

-10-

"in the employee's position would have felt compelled to resign." *Bristow*, 770 F.2d at 1255.

In sum, Johnson has pleaded sufficient facts that, if proven true, would establish a claim of constructive discharge based upon the test adopted by the Fourth Circuit. Although the Supreme Court of Virginia has yet to recognize constructive discharge in the area of employment, the court has recognized constructive behavior in other areas of the law. *See Johnson*, 1997 WL 33120363 at 3. Therefore, I hold that the Supreme Court of Virginia would recognize a claim based on a constructive discharge. In this case, Johnson alleges that the actions taken against her were designed and intended to force her to resign. Thus, I find that Johnson has pleaded sufficient facts to state a claim for constructive discharge.

In addition, it appears that Johnson is attempting to plead facts sufficient to establish a claim under the third public policy exception listed above, "where the discharge was based on the employee's refusal to engage in a criminal act." *See Rowan*, 559 S.E.2d 710-11. For the public policy exception to apply, there must be an articulated public policy. *Rowan*, 559 S.E.2d at 711. Also, the plaintiff claiming the public policy exception must be in the class of persons that the public policy was intended to protect. *See Mitchem v. Counts*, 523 S.E.2d 246, 252 (Va. 2000). The Supreme Court of Virginia has stated that, in regards to the public policy exception, "[t]he exception we recognized was not so broad as to make actionable those discharges of at-will employees which violate only private rights or interests." *See Miller v. SEVAMP, Inc.*, 362 S.E.2d 915, 918 (Va. 1987). Thus, Johnson must allege that she was in the class of persons that the law she refused to violate was designed

to protect.

*Mitchem* is analogous to Johnson's claim. In *Mitchem*, the plaintiff brought a wrongful discharge claim based on the public policies against fornication and lewd and lascivious behavior. *See Mitchem*, 523 S.E.2d at 249. Johnson's claim is based on the public policies embodied in the Virginia laws forbidding fornication, sexual battery, aggravated sexual battery, prostitution and being an accessory to all of the above. In *Mitchem*, the Supreme Court of Virginia said, in the context of a wrongful discharge claim with regard to the laws against fornication, lewd and lascivious behavior,

> the absence of an express statement of public policy in Code §§ 18.2-344 and -345 does not preclude their use as a basis for a common law action for wrongful termination. These criminal statutes were enacted for the protection of the general public, and Mitchem is a member of that class of persons whom these statutes were designed to protect.

*Mitchem*, 523 S.E.2d at 252. Therefore, I find that Johnson has stated a valid claim for wrongful discharge since she is a member of that class of persons that the statutes forbidding fornication, sexual battery, aggravated sexual battery and prostitution are designed to protect. Therefore, the defendants' motion to dismiss Johnson's wrongful discharge claim will be overruled.

### 3. Tortious Interference With Contract

Johnson's final claim against Randles and Collins is for tortious interference with a contract. Johnson alleges that Randles and Collins intentionally caused the termination of her position with Paramont and interfered with her contract of

-12-

employment with Paramont. Because Johnson quit her employment and was not fired, it appears that she is once again arguing that Randles's and Collins's behavior forced her to quit and amounted to a constructive discharge.

A prima facie tortious interference with contract claim by an terminable at-will employee differs from that of a definite-term employee. *See Duggin v. Adams*, 360 S.E.2d 832, 836 (Va. 1987). A terminable at-will plaintiff must "allege and prove not only an *intentional* interference that caused the termination of the at-will contract, but also that the defendant employed '*improper* methods.'" *Duggin*, 360 S.E.2d at 836 (citing *Hechler Chevrolet v. General Motors Corp.*, 337 S.E.2d 744, 748 (Va. 1985)). After having carefully scrutinized Johnson's amended complaint, it would appear that she has pleaded minimally sufficient facts for a tortious interference with contract claim. She alleges that the intentional conduct of Randles and Collins caused her to quit her job, and that their conduct was without any just cause, thereby meeting the requirements that the conduct in question was intentional and improper. Therefore, the defendants' motion to dismiss Johnson's tortious interference with a contract claim will be overruled.

### III. Conclusion

For the reasons set forth in this Memorandum Opinion, the defendants' motion to dismiss will be overruled.

An appropriate order will be entered.

Case 1:05-cv-00079-PMS   Document 42   Filed 09/21/06   Page 13 of 14   Pageid#: 162

DATE: This  21st  day of September, 2006.

                                                                        */s/*
                                                   SENIOR UNITED STATES DISTRICT JUDGE